THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

THE TRIAL LAW FIRM, LLC
Marty Harris (Pro Hac Vice)
445 Fort Pitt Boulevard, Suite 220
Pittsburgh Pennsylvania, 15219
412.588.0030 (p)
412.265.6505 (f)
mh@tlawf.com

*Attorneys for Plaintiff Jamaar Williams*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamaar Williams,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendants. | Case No. CV-20-1367-PHX-SMB-ASB<br><br>**PLAINTIFF'S EMERGENCY MOTION TO COMPEL WITNESS ATTENDANCE AND FOR SANCTIONS ARISING FROM DEFENDANTS' OBSTRUCTION OF TRIAL SUBPOENAS** |

Plaintiff Jamaar Williams, through undersigned counsel, respectfully moves this Court for an emergency order (1) compelling Defendant City of Phoenix (the "City") to make its employee officers available for trial, and (2) sanctioning the City and its counsel for its obstruction of service efforts, beginning with refusal to accept service of process for its own employees.

Trial begins today.[1]  None of the six officers—all employees of Defendant—that Plaintiff seeks to call has been served.  Plaintiff does not bring this motion to assign blame for every decision made in the days before trial.  He brings it because the specific conduct described below—a legally unsupported refusal to accept service undermined by prior practice; a shifting justification for that refusal contradicted by defense counsel's own positions; evidence of process servers being repeatedly misdirected by City personnel to locations and times when they were *not* available; process servers being promised follow-up by police and legal departments and receiving *none* of the promised communication; and at one officer was told by defense counsel he was "not needed" and advising that the trial had been "cancelled"—has left Plaintiff unable to compel the attendance of material witnesses through no fault that is fairly attributable to him.

Plaintiff requests: (1) an order directing the City of Phoenix to produce Officers Barrios, Gage, Ovalle, Hester, and Stewart for trial testimony without further personal service; (2) an award of Plaintiff's costs incurred in the unsuccessful service attempts; and (3) if any officer fails to appear, an adverse inference instruction to the jury.

### FACTUAL BACKGROUND

I.    **Plaintiff Issued Trial Subpoenas to Employees of Defendant City of Phoenix and Asked Counsel for the City to Accept Service.**

On March 30, 2026 at 12:01 p.m. — a week before the April 6, 2026 trial date, and just days after Defendants issued their own subpoenas to non-parties — Plaintiff's counsel transmitted trial subpoenas for twelve Phoenix Police Department officers to defense

---

[1] It appears that last night, after Plaintiff's Counsel Chris Medeksho advised defense counsel that Plaintiff would be filing a Motion for Sanctions, Defendant filed a separate motion, in an apparent effort to proactively shift blame and diffuse valid claims of gamesmanship and sanctionable conduct.  The Court should pay close attention to the emails and information that defense counsel chose *not* to discuss in that document—which are highlighted here.

counsel Lori Berke and asked whether she could accept service on their behalf. Exhibit 1 (Email from S. Benedetto to L. Berke, Mar. 30, 2026).  The request, while perhaps not as early as preferable, was neither unreasonable nor unprecedented:  The City of Phoenix is a party to this matter, and has a custom (at least in prior trials with undersigned counsel— and, upon information and belief, in *all* trials involving its officers) of accepting service of trial subpoenas of its officers rather than requiring them to be personally served.[2]  Notably, each of the twelve officers named in the subpoenas is identified in the parties' disclosure statements as represented by Ms. Berke's firm.  Plaintiff's counsel asked Ms. Berke to do for these witnesses—Ms. Berke's clients—what she and other defense counsel had done in prior cases with undersigned counsel (which undersigned counsel understood to be common practice in the City) and what she was already positioned to do as their counsel of record.

**II.     Defense Counsel Refused Service, Invoking a non-witness's "Undue Burden."**

On March 31, 2026 at 1:25 p.m., Ms. Berke responded—refusing to accept the subpoenas.  Her stated grounds were that serving subpoenas at this stage created an "undue burden both for the officers and the City of Phoenix" and claiming she did "not have authority to accept on behalf of the officers."   Exhibit 2 (Email from L. Berke to S. Benedetto, Mar. 31, 2026).  She asked of the subpoenas were "issued," and indicated she would file a Motion to Quash if they were.

Undersigned counsel responded within two hours. He confirmed that he had caused pointed out the inconsistency with the city's prior practice, noted that undue burden claims must be witness-specific and articulable to be made in good faith, and asked Ms. Berke to

---

[2] In *Anderson v. Armour*, Arizona District Court Case No. 16-03563, a case in which the only claim against the City of Pheonix was for vicarious liability of a single officer, Ms. Berke accepted via email trial subpoenas for multiple Phoenix Police Officers.  In *Martinez, et al. v. City of Phoenix*, Arizona District Court Case No. 2:21-cv-01212, a civil rights case against a Phoenix Police Officer, counsel served all officers with personally subpoenas at their precincts and homes in the days before trial, opposing counsel advised by opposing counsel in that matter (not Ms. Berke) that the City would have accepted service of subpoenas if asked.

identify which officers claimed a burden so that Plaintiff could address their individual circumstances.  Exhibit 3 (Email from S. Benedetto to L. Berke, Marc. 31, 2026).

The next morning, on April 1, 2026, Ms. Berke responded to the request for identification of undue burden on the subpoenaed officers.  Taking issue with the "timing of the subpoenas" being served one week before trial, she claimed that the City would face a "significant operational burden" by the officers testifying, due to the City incurring "overtime costs" and "disrupt[ing] critical operations."  Exhibit 4 (Email from L. Berke to S. Benedetto, April 1, 2026).  She also included a new issue, not previously identified:  that some officers were listed on the "may call" list and "unlikely to call" list, in the Joint Pretrial Statement.  Id.  No undue burden on the officers was identified or claimed.

**III.    Plaintiff narrows the focus of subpoena efforts.**

After incurring substantial difficulty serving the officers, and in a good-faith attempt to address Ms. Berke's concerns, undersigned counsel reduced Plaintiff's request to just five officers:  Barrios, Ovalle, Gage, Hester, and Stewart.  Exhibit 5 (Email from S. Benedetto to L. Berke, Apr. 3, 2026).  Counsel requested that Ms. Berke reconsider her position and accept service to make the officers available.  Id.  He sent numerous follow-ups requesting a response from Ms. Berke.  He received none.

**IV.    Plaintiff encountered obstruction in response to efforts to serve subpoenas.**

After Ms. Berke's initial refusal to accept service on March 31, Plaintiff engaged a process server to begin service on a rush basis.  Service efforts began on the morning of April 1, 2026.  Plaintiff caused its process server to focus on witnesses in order of importance:  Officer Barrios, Detective Ovalle, Lieutenant Gage, Lieutenant Hester, and Officer Stewart.  The ensuing timeline raises a concerning course of apparent obstruction and avoidance—one that could not be explained by Ms. Berke's proactive effort to frame the service difficulties as relating to "holidays":

***Pattern of Misdirection at Phoenix Police Headquarters and the Litigation Division***

On April 1, 2026 at 12:00 PM, process server Kyle Hillis of Hot Shots spoke with Officer Ross #8522 at the front desk of Phoenix Police Headquarters at 620 West Washington Street in Phoenix. Officer Ross advised that each of the officers whose service Plaintiff was seeking — Barrios, Gage, Hester, Ovalle, and Stewart — worked out of the Mountain View Precinct, and asked Hillis to leave his information so someone could call him back. Hillis did so. Shortly thereafter, at 1:40 PM, Emily Hovater — identified as an attorney for the Phoenix Police Department — called the Hot Shot office. She requested the case number and the names of the officers to be served, and advised that someone from Litigation, possibly Jody Corbett, would call back to assist with next steps for making contact with the officers. No call was received from Litigation. Exhibits 6, 7, 8, 9, and 10 (Affidavits of Service).

***Officer Francisco Barrios***

On April 2, 2026 at 12:00 PM, process server Kyle Hillis attempted service at the Mountain View Precinct. He was told Officer Barrios was not on duty and that there was no additional information about his schedule. Hillis called Emily Hovater, who advised she would send an email to each of the officers to contact the process server's office to schedule a time to receive the documents. No officer called or emailed.

On April 3, 2026 at 12:38 p.m., after commissioning a skip trace to identify a home address for Officer Barrios, process server Jonathon Fillerup attempted service at his home. A female came out of the home and stated Barrios was not there and that he was working. Fillerup confirmed that Barrios works for the Phoenix Police Department. A Dodge Charger was parked at the home. Fillerup left messages for Officer Barrios at two separate phone numbers identified as belonging to him.

Also on April 3 at 1:34 p.m., process server Kyle Hillis attempted service at the Mountain View Precinct and was told many of the officers were working at the Final Four event in downtown Phoenix.

On April 4, 2026 at 9:12 a.m., process server Sean Conley attempted service at the residential address of 8818 West Roma Avenue. There was no answer at either door. The Dodge Charger was in the driveway. On April 4 at 12:00 p.m., Conley attempted service at the Mountain View Precinct.  He was told Officer Barrios had a shift starting at 12:30 PM from that precinct, but that the precinct was closed.  Conley was informed that due to budget cuts the precinct is closed on weekends, and that officers reporting there do so through a back gate he could not access. Conley then went downtown to the main precinct on Washington and was told the same.

At 1:02 PM on April 4, Conley returned to Officer Barrios' home address.  There was no answer at either door. The Dodge Charger was still present. Officer Barrios was not served. Exhibit 6.

### *Detective Natalie Ovalle*

On April 2, 2026 at 12:00 p.m., process server Kyle Hillis attempted service at the Mountain View Precinct (where he was told Detective Ovalle worked).  He was told that Detective Ovalle does not work out of that precinct and is out of the Downtown Precinct. Hillis called Emily Hovater, who again advised she would email the officers. No officer called.

On April 4, 2026 at 9:33 a.m., process server Sean Conley attempted service at a residential address identified for Detective Ovalle after a skip trace. There was no answer, though a white Jeep Wagoneer (859ZKT, AZ plates) and a gray Chevy Malibu (CWP3420, AZ plates) were in the driveway. On April 4 at 1:19 p.m., Conley returned to the same address. A Caucasian male with brown hair and beard answered the door and stated Ovalle was not home, that he did not know when she would be back, and did not provide his name.

On April 4 at 3:13 PM, the Hot Shot office left a message for Ovalle at a private phone number assigned to her, advising that they had legal documents for a trial starting Monday and asking her to return the call to arrange a convenient location for service. No response was received. Officer Ovalle was not served. Exhibit 7.

### *Lt. Joseph Gage*

On April 2, 2026 at 12:00 PM, process server Kyle Hillis attempted service at the Mountain View Precinct (where he was advised Lt. Gage worked) and spoke with Officer Martinez #A3354.  Hillis was told Lt. Gage does not work out of that precinct and is out of the Downtown Precinct.  Hillis called Emily Hovater, who again advised she would email the officers to contact Hillis's office. No officer called.

On April 4, 2026 at 3:05 p.m., after being advised by undersigned counsel that Lt. Gage actually works in the South Mountain precinct, process server Christopher Turnage arrived at the South Mountain Precinct at 400 West Southern in Phoenix. He was told Lt. Gage would be starting a shift at 3:30 PM from that precinct.  When Turnage arrived the precinct was closed. There was a non-emergency number on the door. Turnage called and advised he was trying to reach Lt. Gage. He was then told Gage was "not on duty" but that the person answering would take his number and provide it to Gage. While Turnage was in the parking lot writing his notes, a uniformed officer came out of the closed precinct. Turnage explained his purpose and that he was a process server. Two other police vehicles then arrived with their lights on and blocked the entrances to the precinct. They approached Turnage, who again explained his purpose. They took his process server license information and advised him that this was not the best way to serve an officer. Lt. Gage was not served. Exhibit 8.

Meanwhile, undersigned counsel engaged a separate process server to attempt to serve Gage at his residential address, determined from a skip trace.  Those efforts were also unsuccessful (plaintiff is awaiting a formal affidavit of service).

***Officer James Hester***

On April 2, 2026 at 12:00 PM, process server Kyle Hillis attempted service at the Mountain View Precinct (where he was advised Lt. Hester worked). He was told Officer Hester does not work out of that precinct and is out of the Downtown Precinct. Hillis called Emily Hovater, who again advised she would email the officers to contact Hot Shot's office. No officer called.  Officer Hester was not served. Exhibit 9.

***Sergeant Douglas McBride***

On April 2, 2026 at 1:00 PM, process server Jonathon Fillerup attempted service at the residential address of 2753 North 150th Lane in Goodyear, AZ 85395. A skip trace confirmed this address as current for Douglas McBride, shown as owned by the Douglas and Ann McBride Trust. A young male, approximately 25 years old, answered the door. He stated McBride was not there. When asked when McBride would return, he stated he did not know him and that he was a renter. Fillerup called the phone number obtained during skip trace and left a message. McBride returned the call and stated: **"(1) he is currently out of state; and (2) he was told by attorney Lori Berke that he would not be needed for trial. He also mentioned that trial was cancelled."** Sergeant McBride was not served. Exhibit 10.

***Officer Jon Stewart***

On April 2, 2026 at 12:00 PM, process server Kyle Hillis attempted service at the Mountain View Precinct and was told Officer Stewart does not work out of that precinct and is out of the Downtown Precinct. Hillis called Emily Hovater, who again advised she would email the officers.  No officer called.  Officer Stewart was not served. Exhibit 11.

///

**LEGAL ARGUMENT**

I.      **The City's Refusal to Accept Service Contradicted Prior Practice, Was Legally Unsupported, and Threatens to Undermine the Interests of Justice.**

The City's bad faith in this service debacle is evidence from its initial objections: Undue burden is a ground to seek judicial relief from a subpoena, *not a basis to refuse to accept service.*

Rule 45 provides a specific mechanism for a witness who faces an undue burden from a trial subpoena: a motion to quash or modify under Rule 45(d)(3). That mechanism exists precisely so the Court can evaluate the claimed burden, hear from both sides, and fashion appropriate relief. It is not a self-help remedy that counsel may invoke by simply declining to accept service, thereby preventing the subpoena from ever taking legal effect and foreclosing any judicial consideration of whether the claimed burden is real.

Ms. Berke acknowledged the proper procedure when she threatened a motion to quash. The sequence she implicitly described—accept service, then seek judicial relief—is the right one. What she did instead was use the claimed burden as a reason to refuse acceptance, which had the practical effect of nullifying the subpoenas without any Court involvement and without any opportunity for Plaintiff to test or respond to the stated burden. That is not a legitimate exercise of Rule 45's protections. It is a substitution of counsel's unilateral judgment for the Court's. The reason for this substitution is evident from Ms. Berke's own emails: There *is* no rational or lawful basis for the refusal.

In her email to Plaintiff's co-counsel, Ms. Berke relied on *Pochiro v. Prudential Insurance Co. of America*, 827 F.2d 1246 (9th Cir. 1987). That case in inapposite here. As Plaintiff's co-counsel noted in correspondence on April 5, 2026, *Pochiro* addressed whether an attorney representing a client in a state court action had authority to accept service of process initiating a separate federal lawsuit—a collateral proceeding, not an active case in which the attorney was already counsel of record. Exhibit 4 (Email from C. Madeksho to

L. Berke, Apr. 5, 2026 at 4:43 PM). That is not this case here: Ms. Berke represents these officers in this proceeding. *Pochiro* says nothing about whether trial subpoenas in an active federal case may be served through counsel of record.

Plaintiff's counsel invited this Court's involvement at every turn. He asked Ms. Berke to identify specific officer burdens so they could be briefed. She declined. Co-counsel Mart Harris requested a conference with the Court on April 2 to resolve the dispute before trial began. Exhibit 1 (Harris email, Apr. 2, 2026 at 4:04 PM). She refused. The consequence of defense counsel's gamesmanship now falls on Plaintiff.

## II. The Stated Justification Was Contradicted by Defense Counsel's Own Prior Proposal and Was Never Substantiated.

Even setting aside the procedural defect in Ms. Berke's approach, the substance of her objection does not hold up. She identified preparation time as the operative burden. But at the pretrial conference on March 27, 2026—just days before she refused to accept service—Ms. Berke herself proposed that the parties agree to provide "48 hours" notice before calling a witness from the "may call" list—the exact same category of witnesses whose subpoenas she refused, a full week before trial, on preparation-time grounds.

The two positions cannot be reconciled. Either 48 hours is sufficient time for these witnesses to prepare—in which case subpoenas served one week before trial impose no cognizable burden—or it is not, in which case Ms. Berke was proposing to impose that same burden on her own clients through her own notice proposal.

The objection was also never substantiated in the way Rule 45 requires. Undue burden claims must be specific to the individual witness and grounded in articulable facts. Undersigned counsel specifically asked Ms. Berke on March 31 to identify which officers claimed a burden and what that burden consisted of, so that Plaintiff could attempt to address their individual circumstances. She did not respond to that request. No officer was

ever identified. No specific burden was ever described. And no motion to quash was ever filed—which, if the burden were real, would have been the appropriate next step.

### III.   The Record Raises Serious Questions About Whether Ms. Berke Actually Consulted Her Clients.

Ms. Berke stated she lacked "authority" to accept service on behalf of the officers. The record raises a reasonable question about whether that claim reflects an actual client instruction or a decision made without consulting them. Ms. Berke's initial refusal came back quickly, applied universally to all twelve officers without differentiation, offered a single blanket rationale, and was never tied to any specific officer's schedule, other commitments, or personal situation. When Plaintiff's counsel asked her to identify which officers claimed a burden, Ms. Berke did not respond. When co-counsel Madeksho asked her directly on April 5 to confirm that she had actually consulted her clients about whether to authorize acceptance of service, she did not answer that question either.

The Court may find it useful to know whether any officer actually instructed Ms. Berke to refuse. If none did, then the refusal was a litigation decision made by counsel, not a client directive—and the characterization of it as a matter of "authority" would require further examination.

### IV.   The Court Has Authority to Grant the Requested Relief

The Court has inherent authority to sanction bad faith conduct or conduct that is tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001). Under its inherent power to manage proceedings and sanction bad-faith conduct that abuses the judicial process, the Court may compel attendance and award fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). A party "demonstrates bad faith by delaying or disrupting the litigation." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).

- 11 -

Defense counsel's legally unsupported refusal to accept service—contrary to her client's prior practice, her own prior practice, unsupported by the authority she cited, and never substantiated through the procedures Rule 45 provides—combined with evidence of a City-wide effort to avoid these officers being served justifies relief under the court's inherent authority.  It has forced undersigned counsel to spend substantial time and resources employees of the Defendant who are represented by counsel.  *See also* 28 U.S.C. § 1927 (authorizing fee awards against counsel who unreasonably and vexatiously multiply proceedings).

If any officer fails to appear at trial after an order of this Court, an adverse inference instruction is also appropriate.  *See, e.g.*, *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (where a party's conduct deprives the opposing party of evidence to which it was entitled, the jury may be instructed to draw an inference that the missing evidence would have been unfavorable).  The factual record here—repeated misdirection by Phoenix Police Department personnel, ongoing failures by City officials to make officers available for service, and the McBride account in particular, if credited—suggests that officer unavailability was not coincidental.

## V.      The Requested Relief Is Tailored to the Harm

**Compelled attendance.** The Court should order the City of Phoenix to produce Officers Barrios, Gage, Hester, McBride, Ovalle, and Stewart for trial testimony as called by Plaintiff, without further personal service. The City is a party to this litigation. Ms. Berke is counsel of record for each of these officers in this case.  It is no mystery to anyone involved in this case that Barrios, Ovalle, and Gage are material witnesses that were likely to be called.  The City was aware, no later than, March 30, 2026 that Plaintiff intended to call them. The City's refusal to facilitate their attendance through the normal professional

mechanism, while simultaneously blocking personal service, cannot be permitted to deprive Plaintiff of witnesses he is entitled to call.

**Fee award.** The Court should order Defendants to pay the reasonable costs Plaintiff incurred in attempting to effect personal service on these six officers—including process server fees, mileage, and related expenses—from the date Ms. Berke refused acceptance through the conclusion of service attempts. These costs were incurred solely because defense counsel refused to accept service on behalf of clients she already represents, without legal justification and contrary to her own prior practice in this case.

**Adverse inference instruction.** If any of these officers fails to appear for trial testimony despite an order of this Court, Plaintiff requests that the jury be instructed that it may draw an inference that the officer's testimony would have been unfavorable to Defendants. This relief is reserved for the contingency that the Court's order is not complied with, and is proportionate to the potential harm.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court: (1) order the City of Phoenix to produce Officers Barrios, Ovalle, Gage, Hester, and Stewart for trial testimony without further personal service; (2) award Plaintiff his reasonable costs incurred in the failed service attempts; and (3) if any such officer fails to appear at trial in compliance with the Court's order, issue an adverse inference instruction to the jury.

DATED this 6th day of April, 2026.

THE PEOPLE'S LAW FIRM

By:/s/ Stephen D. Benedetto
Stephen D. Benedetto

*Counsel for Plaintiff*

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, I electronically transmitted the foregoing document to the CM/ECF registrants on record in this matter:

Lori Berke, Esq.
Anelisa Benavides, Esq
BERKE LAW FIRM, PLLC
1601 North 7th Street, Suite 360
Phoenix, Arizona  85006
lori@berkelawfirm.com
anelisa@berkelawfirm.com

*Attorneys for Defendants*

/s/ Stephen D. Benedetto
*An employee of The People's Law Firm, PLC*